IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TRILLIANT SURGICAL, LLC, a Texas limited liability company,<br><br>                        Plaintiff,<br><br>                        v.<br><br>NICHOLAS V. RICCIONE; and MEDUSA ORTHOPEDICS, LLC, a Pennsylvania limited liability company,<br><br>                        Defendants. | Civil Action No. 1:25-cv-00457 MN<br><br>**COMPLAINT**<br><br>REDACTED PUBLIC VERSION<br>Original Filing Date:  April 14, 2025<br>Redacted Filing Date:  April 22, 2025 |

Plaintiff Trilliant Surgical, LLC ("Trilliant"), by and through its undersigned counsel, hereby files this Complaint against Defendants Nicholas V. Riccione ("Riccione") and Medusa Orthopedics, LLC ("Medusa" and, together with Riccione, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. This case arises out of Trilliant's multi-million-dollar acquisition of the assets of D.N.E., LLC ("DNE"), a company that made and sold medical products. As a condition of sale, DNE and its principal, Riccione, agreed not to promote or sell any products that are competitive to Trilliant's products for five years. Riccione also agreed to provide Trilliant consulting services and to assign to Trilliant all of his rights, title, and interests in the results and proceeds of services within the scope of the consulting engagement. Unfortunately, Riccione willfully breached his obligations. Riccione formed Medusa, where he developed and is now in the process of commercializing products that are intended to directly compete with, and are virtually identical to, those he formerly developed and sold through DNE. Riccione's misconduct, both individually and as principal of Medusa, has deprived Trilliant of the benefit of its bargain and, without judicial intervention, will cause it irreparable, ongoing harm.

1

Trilliant seeks preliminary and permanent injunctive relief, monetary damages, interest, costs, and other relief as the Court deems just and proper.

## PARTIES

2. Trilliant, which currently does business as Enovis Foot & Ankle, is a Texas limited liability company with its principal place of business in Texas. Trilliant's sole member is Encore Medical, L.P, a Delaware limited partnership. Encore Medical, L.P.'s general partner is Encore Medical GP, LLC and its limited partner is Encore Medical Partners, LLC.

- Encore Medical, GP LLC, is a Nevada limited liability company and its sole member is DJO, LLC.

- Encore Medical Partners, LLC, is a Nevada limited liability company and its sole member is DJO, LLC.

  - DJO, LLC, is a Delaware limited liability company and its sole member is DJO Finance LLC.

    - DJO Finance LLC, is a Delaware limited liability company, and its sole member is DJO Global Inc.

      - DJO Global Inc., is a Delaware corporation with its principal place of business in Texas.

3. Riccione is an individual who is domiciled and resides in Boca Raton, Florida. Riccione was the sole member and manager of DNE.

4. Medusa is a Pennsylvania limited liability company founded by Riccione, who is a member and manager of Medusa.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity between Trilliant and its members on the one hand, and

Defendants, on the other hand, and (ii) the amount in controversy exceed $75,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over Riccione because he executed that certain APA (as hereinafter defined) under which he "irrevocably submit[ted] to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement [and] irrevocably waive[d], to the fullest extent permitted by applicable Law, any objection that they may now or hereafter have to the laying of venue … in such court…." Ex. A, APA, § 9.7.

7. The Court has personal jurisdiction over Medusa, which is owned and managed by Riccione, because it is related to Riccione within the meaning of governing law; because it had constructive notice of the APA by notice to its manager/member, Riccione; because it directly and indirectly benefitted from the APA; and because it reasonably should have foreseen that it would be hailed into court in Delaware in connection with disputes relating to the APA, including Medusa's tortious interference with the APA, as alleged herein.

## FACTUAL ALLEGATIONS

8. Prior to April 27, 2023, DNE designed, manufactured, sold, and distributed static external fixation frames for treatment of the foot and ankle, specifically including the "Charcot" circular frame, speed frame, W.O.L.F. frame, pin to bar frame, and mini rails (the "Products"). A typical example of a DNE product is depicted below:



*Fig. 1, Exemplar of DNE circular frame.*

9.     DNE advertised that its circular frame product, pictured above, was superior to the competition because it employed angular correction clamps that allowed a surgeon to angulate, rotate, compress, and distract in any direction, meaning that a single angular correction clamp could take the place of four different size struts in a competing product.

### ***Trilliant Acquires DNE***

10.     Some time prior to April 27, 2023, Trilliant, on the one hand, and DNE and its principal, Riccione, on the other hand, discussed the possibility of Trilliant acquiring DNE.

11.     Trilliant was interested in potentially acquiring DNE to expand its business in the external fixation space and because it saw value in DNE's Products, which were distinguishable from other products on the market.

12.     On April 27, 2023, Trilliant, DNE, and Riccione entered into that certain Asset Purchase Agreement (the "APA"), a true and correct copy of which is attached as Exhibit A, pursuant to which Trilliant acquired substantially all DNE's assets for a ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆, subject to certain adjustments.

13.     Under the APA, Trilliant acquired enumerated "Purchased Assets," which included, *inter alia*, DNE's entire inventory of Products; the molds, tooling, supplies, and other physical items used in or in connection with manufacturing the Products; DNE's intellectual

4

property; all goodwill of the Company of every kind and description to the extent pertaining to the Products; and the exclusive right to represent itself as using the Products in succession to DNE. Ex. A, APA, § 1.1 (a)-(h).

14. Critically, the APA sets forth a covenant not to compete (the "Covenant Not to Compete") which states, in relevant part:

> Beginning on the Closing Date and continuing until the fifth anniversary of the Closing Date (the "Covenant Period"), neither [Riccione] nor the [DNE] … will, and each … will cause its Affiliates not to, directly or indirectly, anywhere in the world (the "Territory"), (i) operate, control, or permit its name to be used in connection with, or otherwise engage in any business or activity that develops, manufactures, or markets product that are competitive to the Products ("Competing Products"), or (ii) invest in, own, manage, operate, finance, advise, render services to, consult with, permit its name to be used by, or guarantee the debts or obligations of any person engaged in or, to the Knowledge of the Company, planning to become engaged in any business or activity that develops, manufactures, or markets Competing Products….

Ex. A, APA, § 7.1(a).

15. DNE and Riccione expressly acknowledged and agreed that their Covenant Not to Compete was a material condition to Trilliant's execution and delivery of the APA and that Trilliant would not have entered into the APA in the absence of such covenant. Ex. A, APA, § 7.1(g).

16. DNE and Riccione also acknowledged and agreed that if they violated their Covenant Not to Compete, it would be difficult to determine the entire cost, damage, or injury that Trilliant would sustain; that Trilliant would not have an adequate remedy at law; and that Trilliant would have the right to obtain injunctive relief without foreclosing or in any way limiting Trilliant's right to obtain a money judgment against DNE, Riccione, or their Affiliates. Ex. A, APA, § 7.1(e).

17. Riccione and DNE agreed to indemnify Trilliant for all Losses, including reasonable attorneys' fees, arising out of their breach of the APA, as provided in Article VI thereof. Ex. A, APA, Art. VI.

18. In addition to their Covenant Not to Compete, Riccione and DNE also covenanted and agreed to strictly maintain the confidentiality of, among other things, "any and all information, whether written or oral, concerning the Purchased Assets or the Products" and not to use any such information in a manner that would conflict with their obligations under the covenant not to compete. Ex. A, APA, § 7.2.

### *Riccione Executes a Consulting Agreement with Trilliant*

19. As required by the APA, and to further its purposes, Trilliant and Riccione entered into a Consulting Agreement dated July, 2023 (the "Consulting Agreement"), a true and correct copy of which is attached as Exhibit B, pursuant to which Trilliant engaged Riccione to advise the Company and provide commercial and clinical support on an as needed basis, including by assisting Trilliant with Product training and transitioning Product expertise to its employees and affiliates. Ex. B, Consulting Agreement, § 2.

20. Pursuant to the Consulting Agreement, Riccione agreed that Trilliant would be the owner of any intellectual property developed by Riccione within the scope of his engagement:

> [Trilliant] is and shall be, the sole and exclusive owner of all right, title and interest throughout the world in and to all the results and proceeds of the services performed under [the Consulting Agreement] (collectively, the "Deliverables"), including all patents, copyrights, trademarks, trade secrets and other intellectual property rights ("Intellectual Property Rights") therein. [Riccione] agrees that the Deliverables are hereby deemed a "work made for hire" as defined in 17 U.S.C. § 101 for [Trilliant]. If, for any reason, any of the Deliverables do not constitute a "work made for hire," [Riccione] hereby irrevocably assigns to [Trilliant], in each case without consideration, all rights, title and interest throughout the world in and to the Deliverables, including all Intellectual Property Rights therein….

Ex. B, Consulting Agreement, § 10(b).

21. The Consulting Agreement, like the APA, required Riccione to maintain the confidentiality of all proprietary and confidential information of Trilliant. Ex. B, Consulting Agreement, § 10(a).

22. The Consulting Agreement contains a mandatory prevailing party fee-shifting provision applicable to any action or proceeding to enforce rights under such agreement. Ex. B, Consulting Agreement, § 12.

23. Since acquiring DNE, Trilliant has continued to market and sell the Products throughout the United States and internationally. A typical example of a circular frame product currently sold by Trilliant is depicted below:



*Fig. 2, Exemplar of Trilliant circular frame.*

***Riccione Violates His Covenant Not to Compete***

24. Notwithstanding his express and continuing obligations under the aforementioned agreements, Riccione was observed promoting products that compete with and are nearly identical to the Products formerly sold by DNE and now sold by Trilliant.

25. Specifically, an employee of Trilliant observed Riccione and his son, Nicholas S. Riccione ("Nico"), at an American College of Foot and Ankle Surgeons (ACFAS) conference in Phoenix, Arizona, between March 27 and March 29, 2025, where they exhibited external fixation products bearing the "Medusa" name (the "Medusa Products"). One example is depicted in the photograph below:



*Fig. 3, Medusa circular frame product.*

26. At the same conference, Riccione's exhibit also presented product literature attributing the product to "Medusa Orthopedics." The product literature is depicted in the photograph below:



*Fig. 4, Medusa product literature.*

27. Trilliant subsequently learned by examination of corporate filings that Riccione was an owner and founder of Medusa.

28. Riccione formed Medusa on November 2, 2023, by filing a certificate of organization with the Department of State Bureau of Corporations and Charitable Organizations of the Commonwealth of Pennsylvania (the "Certificate of Organization"). A true and correct copy of the Certificate of Organization is attached as Exhibit C.

29. According to the Certificate of Organization, Medusa's registered address is an apartment in Breinigsville, Pennsylvania. On information and belief, Riccione's son, Nico, resides in or near Breinigsville.

30. Riccione formed Medusa just seven months after he signed the APA, and with the clear intention of violating his five-year covenant not to compete, which he is now doing.

31. Riccione also formed Medusa and began marketing competing products during the one-year term of his Consulting Agreement.

32. The Medusa Products are essentially identical to the DNE/Trilliant counterparts and are intended for the same medical and surgical applications. As such, the Medusa Products directly compete with the Products sold by DNE.

33. However, the Medusa Products appear to have minor design and aesthetic modifications. To the extent the Medusa Products reflect Riccione's development of patents, copyrights, trademarks, trade secrets or other intellectual property rights during the term and within the scope of the Consulting Agreement, such rights and any proceeds thereof belong to Trilliant.

### *Trilliant Has Suffered, and Continues to Suffer, Irreparable Harm*

34. Trilliant has a legitimate and protectible interest in enforcing the Covenant Not to Compete and Consulting Agreement including (i) its interest in preserving the benefit of its bargain to acquire DNE, its intellectual property and goodwill, and the right to exclusively distribute the Products; and (ii) its interest in protecting its trade secrets and other confidential

and proprietary information pertaining to the Products, customers, pricing, and manufacturing of the Products.

35. By virtue of Riccione's past ownership of DNE, his personal role in developing the Products, and his consulting arrangement with Trilliant, his breaches of the Covenant Not to Compete and Consulting Agreements have caused irreparable harm and continue to pose the risk of further irreparable harm, to Trilliant.

36. Due to the nature of harm, Trilliant's damages cannot be calculated with precision. However: (i) Trilliant would not have purchased DNE for approximately ██████ but for Riccione's agreement to abide by the restrictive covenants in the APA, including the Covenant Not to Compete; (ii) if Riccione and Medusa continue to commercialize the competing and nearly identical Medusa Products, it will cause Trilliant to lose its competitive position and result in a substantial loss of revenue to Trilliant, well in excess of the $75,000 jurisdictional limit.

## CLAIMS FOR RELIEF

### Count I: Breach of Contract Against Riccione – Covenant Not to Compete

37. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

38. The APA is a valid and enforceable contract among Trilliant, Riccione, and DNE.

39. Trilliant performed all its obligations and conditions precedent, if any, under the APA.

40. Riccione is in present, material breach of the APA and, more particularly, the Covenant Not to Compete by developing, promoting, and marketing the Medusa Products, which directly compete with the Products.

41. As a direct, proximate, and foreseeable result of Riccione's material breach of the APA, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

42. As Riccione expressly acknowledged, while Trilliant is entitled to recover its monetary damages, attorneys' fees, costs, and other Losses, money damages are an inadequate remedy for a breach of the Covenant Not to Compete.

43. If not preliminarily and permanently enjoined, Riccione will continue to violate his obligations to Trilliant and will continue to cause damage to Trilliant's business and goodwill.

### Count II: Breach of Contract Against Riccione – Consulting Agreement

44. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

45. The Consulting Agreement is a valid and enforceable contract between Trilliant and Riccione.

46. Trilliant performed all of its obligations and conditions precedent, if any, under the Consulting Agreement.

47. Riccione is in present, material breach of the Consulting Agreement by developing and using intellectual property derived from the Products and within the scope of the Consulting Agreement for his own purposes, to compete with Trilliant, which intellectual property and the proceeds thereof rightly belong to Trilliant.

48. As a direct, proximate, and foreseeable result of Riccione's material breach of the Consulting Agreement, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

49. As a consequence of Riccione's breach, Trilliant is entitled to recover damages, an order directing Riccione to hold such intellectual property and the proceeds thereof in

constructive trust, and to convey and deliver the same to Trilliant, injunctive relief, and an award of attorneys' fees.

### Count III: Breach of Fiduciary Duty Against Riccione

50. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

51. By virtue of his role under the Consulting Agreement, Riccione had access to and acquired confidential and proprietary knowledge and information regarding Trilliant and the Products and, as such, owes a fiduciary duty to Trilliant not to use such information in competition with Trilliant.

52. Riccione also owed a duty to use his best efforts in fulfillment of his duties under the Consulting Agreement, and not to use intellectual property derived during the term of the agreement, which properly belonged to Trilliant, for his own purposes or to compete with Trilliant.

53. Riccione breached these duties by (i) using or attempting to use Trilliant's confidential and proprietary information for his own purposes and to compete with Trilliant; and (ii) by using intellectual property derived during the term of the Consulting Agreement, which properly belonged to Trilliant, for his own purposes or to compete with Trilliant.

54. As a direct, proximate, and foreseeable result of Riccione's material breach of his fiduciaries duties to Trilliant, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

55. In breaching his fiduciary duties, Riccione acted willfully, wantonly, intentionally, and with malice.

### Count IV: Tortious Interference Against Medusa

56. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

57. The APA and Consulting Agreement are valid and enforceable contracts that contain reasonable terms designed to protect Trilliant's legitimate and protectible business interests.

58. At all times, Medusa had notice or constructive notice of the existence and terms of the APA and Consulting Agreement by virtue of the fact that its principal, Riccione, is a party to those contracts.

59. Notwithstanding its knowledge of the terms of the APA and Consulting Agreement, Medusa has permitted Riccione to develop and promote the Medusa Products on its behalf, which Medusa Products are substantially similar to and in direct competition with Trilliant's Products.

60. Medusa also knowingly allowed Riccione to develop and use intellectual property for the benefit of Medusa, Trilliant's competitor, notwithstanding such intellectual property rightly belongs to Trilliant under the Consulting Agreement.

61. Medusa has tortiously and intentionally interfered with Trilliant's present and prospective business and contractual relationships for its own benefit, without right or justification.

62. Medusa acted willfully, wantonly, intentionally, and with malice.

63. As a direct, proximate, and foreseeable result of Medusa's tortious and intentional misconduct, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

64. Trilliant is entitled to recover damages, an order directing Medusa to hold such intellectual property and the proceeds thereof in constructive trust, and to convey and deliver the same to Trilliant, injunctive relief, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Riccione and Medusa as follows:

    A.    Awarding Plaintiff its monetary damages in an amount to be determined at trial;

    B.    Awarding Plaintiff pre-judgment and post-judgment interest;

    C.    Awarding Plaintiff its costs and expenses incurred in this action, including reasonable attorneys' fees;

    D.    Enjoining Riccione and Medusa, preliminarily and permanently, from engaging in further breaches of the APA and Consulting Agreement;

    E.    Ordering Riccione and Medusa to hold all intellectual property derived by Riccione during the term of the Consulting Agreement in constructive trust, and that the same be disgorged to Trilliant, forthwith;

    F.    Punitive damages; and

    G.    Granting such other and further relief as the Court deems just and proper.

Dated: April 14, 2025

OF COUNSEL:

NIXON PEABODY LLP
Michael Summerhill*
msummerhill@nixonpeabody.com
Ethan Trull*
etrull@nixonpeabody.com
Keith Edeus*
keedeus@nixonpeabody.com
Christina E. Kurow*
ckurow@nixonpeabody.com
70 W. Madison Street, Suite 5200
Chicago, IL 60602-4378
(312) 977-4400
*pro hac vice applications forthcoming

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ John P. DiTomo*
John P. DiTomo (#4850)
Sara Carnahan (#7175)
Cassandra L. Baddorf (#7365)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
jditomo@morrisnichols.com
scarnahan@morrisnichols.com
cbaddorf@morrisnichols.com

*Attorneys for Plaintiff*