UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TRILLIANT SURGICAL, LLC, a Texas limited liability company,<br><br>                 Plaintiff,<br><br>        v.<br><br>NICHOLAS RICCIONE,<br><br>                 Defendant. | Civil Action No. 1:25-cv-00457-MN<br><br>**REDACTED PUBLIC VERSION**<br>Original Filing Date: April 21, 2025<br>Redacted Filing Date: April 28, 2025 |

**FIRST AMENDED COMPLAINT**

Plaintiff Trilliant Surgical, LLC ("Trilliant"), by and through its undersigned counsel, hereby files this First Amended Complaint against Defendant Nicholas Riccione ("Riccione Sr." or "Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1. This case arises out of Trilliant's multi-million-dollar acquisition of the assets of D.N.E., LLC ("DNE"), a company that made and sold medical products. As a condition of sale, DNE and its principal, Riccione Sr., agreed not to promote or sell any products that are competitive to Trilliant's products for five years. Riccione Sr. also agreed to provide Trilliant consulting services and to assign to Trilliant all of his rights, title, and interests in the results and proceeds of services within the scope of the consulting engagement. Unfortunately, Riccione Sr., acting in concert with his son and former DNE employee, Nicholas Riccione Jr. ("Nico"), willfully breached his obligations.

2. In particular, Riccione Sr. and Nico, now acting through a new company, Pennsylvania-based Medusa Orthopedics, LLC ("Medusa"), are in the process of developing and commercializing products that are intended to directly compete with, and are virtually identical to, those Riccione Sr. formerly developed and sold through DNE. This unlawful

conduct has deprived Trilliant of the benefit of its bargain and, absent Court intervention, will cause it irreparable, ongoing harm.

3. Trilliant seeks preliminary and permanent injunctive relief, monetary damages, interest, costs, and other relief as the Court deems just and proper.

## PARTIES

4. Trilliant, which currently does business as Enovis Foot & Ankle, is a Texas limited liability company with its principal place of business in Texas. Trilliant's sole member is Encore Medical, L.P, a Delaware limited partnership. Encore Medical, L.P.'s general partner is Encore Medical GP, LLC and its limited partner is Encore Medical Partners, LLC.

- Encore Medical, GP LLC, is a Nevada limited liability company and its sole member is DJO, LLC.
- Encore Medical Partners, LLC, is a Nevada limited liability company and its sole member is DJO, LLC.
  - DJO, LLC, is a Delaware limited liability company and its sole member is DJO Finance LLC.
    - DJO Finance LLC, is a Delaware limited liability company, and its sole member is DJO Global Inc.
      - DJO Global Inc., is a Delaware corporation with its principal place of business in Texas.

None of the foregoing entities or their members are domiciled in, are citizens of, or have their principal places of business in Florida.

5. Riccione Sr. is an individual who is domiciled and resides in Boca Raton, Florida. Riccione Sr. was the sole member and manager of DNE.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity between Trilliant and its members on the one hand, and Defendant, on the other hand, and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. The Court is a proper venue and has personal jurisdiction over Riccione Sr. because he executed that certain APA (as hereinafter defined) under which he "irrevocably submit[ted] to the exclusive jurisdiction of any federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement [and] irrevocably waive[d], to the fullest extent permitted by applicable Law, any objection that they may now or hereafter have to the laying of venue … in such court…." Ex. A, APA, § 9.7.

**FACTUAL ALLEGATIONS**

8. Prior to April 27, 2023, Riccione Sr. owned DNE, which designed, manufactured, sold, and distributed static external fixation frames for treatment of the foot and ankle, specifically including the "Charcot" circular frame, speed frame, W.O.L.F. frame, pin to bar frame, and mini rails (the "Products").

9. During the same time period, Nico worked at DNE as a clinical specialist and was directly involved in attending surgeries and otherwise promoting DNE's products.

10. A typical example of a DNE product is depicted below:



*Fig. 1, Exemplar of DNE circular frame.*

11. DNE advertised that its circular frame product, pictured above, was superior to the competition because it employed angular correction clamps that allowed a surgeon to angulate, rotate, compress, and distract in any direction, meaning that a single angular correction clamp could take the place of four different size struts in a competing product.

***Trilliant Acquires DNE***

12. Some time prior to April 27, 2023, Trilliant, on the one hand, and DNE and its principal, Riccione Sr., on the other hand, discussed the possibility of Trilliant acquiring DNE.

13. Trilliant was interested in potentially acquiring DNE to expand its business in the external fixation space and because it saw value in DNE's Products, which were distinguishable from other products on the market.

14. On April 27, 2023, Trilliant, DNE, and Riccione Sr. entered into that certain Asset Purchase Agreement (the "APA"), a true and correct copy of which is attached as Exhibit A, pursuant to which Trilliant acquired substantially all DNE's assets for a ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬, subject to certain adjustments.

15. Under the APA, Trilliant acquired enumerated "Purchased Assets," which included, *inter alia*, DNE's entire inventory of Products; the molds, tooling, supplies, and other physical items used in or in connection with manufacturing the Products; DNE's intellectual

4

property; all goodwill of the Company of every kind and description to the extent pertaining to the Products; and the exclusive right to represent itself as using the Products in succession to DNE. Ex. A, APA, § 1.1 (a)-(h).

16.     Critically, the APA sets forth a covenant not to compete (the "Covenant Not to Compete") which states, in relevant part:

> Beginning on the Closing Date and continuing until the fifth anniversary of the Closing Date (the "Covenant Period"), neither [Riccione Sr.] nor the [DNE] … will, and each … will cause its Affiliates not to, directly or indirectly, anywhere in the world (the "Territory"), (i) operate, control, or permit its name to be used in connection with, or otherwise engage in any business or activity that develops, manufactures, or markets product that are competitive to the Products ("Competing Products"), or (ii) invest in, own, manage, operate, finance, advise, render services to, consult with, permit its name to be used by, or guarantee the debts or obligations of any person engaged in or, to the Knowledge of the Company, planning to become engaged in any business or activity that develops, manufactures, or markets Competing Products….

Ex. A, APA, § 7.1(a).

17.     "Affiliate" is defined, with respect to Riccione Sr., to include any Person "that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with" Riccione Sr. Ex. A, APA, Annex A (Definitions).

18.     Riccione Sr. expressly acknowledged and agreed that his Covenant Not to Compete was a material condition to Trilliant's execution and delivery of the APA and that Trilliant would not have entered into the APA in the absence of such covenant. Ex. A, APA, § 7.1(g).

19.     Riccione Sr. also acknowledged and agreed that if he violated his Covenant Not to Compete, it would be difficult to determine the entire cost, damage, or injury that Trilliant would sustain; that Trilliant would not have an adequate remedy at law; and that Trilliant would have the right to obtain injunctive relief without foreclosing or in any way limiting Trilliant's right to obtain a money judgment against DNE, Riccione Sr., or their Affiliates. Ex. A, APA, § 7.1(e).

20.  Riccione Sr. agreed to indemnify Trilliant for all Losses, including reasonable attorneys' fees, arising out of their breach of the APA, as provided in Article VI thereof. Ex. A, APA, Art. VI.

21.  Riccione Sr. also expressly represented and warranted that neither DNE nor any "Related Party" (including Nico and Riccione Sr. himself) "has or has had, either directly or indirectly, an interest in any [entity] that … is a competitor or is reasonably expected to become a competitor of [DNE]." Ex. A, APA, § 2.18.

22.  In addition to his Covenant Not to Compete, Riccione Sr. also covenanted and agreed to strictly maintain the confidentiality of, among other things, "any and all information, whether written or oral, concerning the Purchased Assets or the Products" and not to use any such information in a manner that would conflict with their obligations under the covenant not to compete. Ex. A, APA, § 7.2.

23.  As required by the APA, and to further its purposes, Trilliant and Riccione Sr. entered into a Consulting Agreement dated July, 2023 (the "Consulting Agreement"), a true and correct copy of which is attached as Exhibit B, pursuant to which Trilliant engaged Riccione Sr. to advise the Company and provide commercial and clinical support on an as needed basis, including by assisting Trilliant with Product training and transitioning Product expertise to its employees and affiliates. Ex. B, Consulting Agreement, § 2.

24.  Pursuant to the Consulting Agreement, Riccione Sr. agreed that Trilliant would be the owner of any intellectual property developed by Riccione Sr. within the scope of his engagement:

> [Trilliant] is and shall be, the sole and exclusive owner of all right, title and interest throughout the world in and to all the results and proceeds of the services performed under [the Consulting Agreement] (collectively, the "Deliverables"), including all patents, copyrights, trademarks, trade secrets and other intellectual property rights ("Intellectual Property Rights") therein. [Riccione Sr.] agrees that the Deliverables are hereby deemed a "work made for hire" as defined in 17 U.S.C. § 101 for [Trilliant]. If, for any reason, any of the Deliverables do not constitute a "work made for hire," [Riccione Sr.] hereby

> irrevocably assigns to [Trilliant], in each case without consideration, all rights, title and interest throughout the world in and to the Deliverables, including all Intellectual Property Rights therein….

Ex. B, Consulting Agreement, § 10(b).

25. The Consulting Agreement, like the APA, required Riccione Sr. to maintain the confidentiality of all proprietary and confidential information of Trilliant. Ex. B, Consulting Agreement, § 10(a).

26. The Consulting Agreement contains a mandatory prevailing party fee-shifting provision applicable to any action or proceeding to enforce rights under such agreement. Ex. B, Consulting Agreement, § 12.

27. Since acquiring DNE, Trilliant has continued to market and sell the Products throughout the United States and internationally. A typical example of a circular frame product currently sold by Trilliant is depicted below:



*Fig. 2, Exemplar of Trilliant circular frame.*

***Riccione Sr. and Nico Conspire to Violate the Agreements***

28. Notwithstanding the foregoing, Nico and Riccione Sr. have conspired to violate the aforementioned agreements by planning and actively participating in competition with Trilliant.

29. An employee of Trilliant observed Riccione Sr. and Nico at an American College of Foot and Ankle Surgeons (ACFAS) conference in Phoenix, Arizona, between March

27 and March 29, 2025, where they exhibited external fixation products bearing the "Medusa" name (the "Medusa Products"). One example is depicted in the photograph below:



*Fig. 3, Medusa circular frame product.*

30. At the same conference, Riccione Sr. and Nico also provided literature attributing the product to "Medusa Orthopedics." The product literature is depicted in the photograph below:



*Fig. 4, Medusa product literature.*

31. The Medusa Products are essentially identical to the DNE/Trilliant counterparts and are intended for the same medical and surgical applications. As such, the Medusa Products directly compete with the Products sold by DNE.

32. "Nicholas V. Riccione" formed Medusa on November 2, 2023, by filing a certificate of organization with the Department of State Bureau of Corporations and Charitable Organizations of the Commonwealth of Pennsylvania (the "Certificate of Organization"). A true and correct copy of the Certificate of Organization is attached as Exhibit C.

33. The co-founder/member is identified as Jose C. Gonzalez, with a Florida address (Nico resides in Pennsylvania; Riccione Sr. resides in Florida).

34. Armed with this information, Trilliant caused an evidence preservation letter to be served on Riccione Sr. and Nico. Riccione Sr. responded by a telephone call to Trilliant's counsel and left a voicemail message in which he stated that his son Nico, not Riccione Sr., is "Nicholas V. Riccione" and owns Medusa. In the same message Riccione Sr. volunteered that he (the father) owned Stinger.

35. Trilliant has seen other evidence suggesting that Riccione Sr. is "Nicholas V. Riccione." Regardless, Trilliant believes that Riccione Sr. is the true owner of Medusa and to the extent that an effort was made to create the appearance that Nico is the owner and operator of that business, that effort is a sham intended to obfuscate that Riccione Sr. is the true party in interest.

36. Other evidence establishes that Riccione Sr. and his son, Nico, are closely working together to commercialize products in the orthopedic fixation space.

37. For example, Riccione Sr. and Nico are both associated with another company, Stinger Orthopedics, LLC, a Florida limited liability company ("Stinger"), which is engaged in advertising a wireless hexapod system for treatment of orthopedic deformities.

38. According to the records of the Florida Secretary of State, Riccione Sr. formed Stinger on January 20, 2023, approximately three months *prior* to his execution of the APA.

39. As of the date of the filing of this First Amended Complaint, there was a public website available, https://www.stingerortho.com/, which purports to be a home page for "Stinger Orthopedics, LLC." The website advertises Stinger's "cutting-edge systems that blend technology and innovation to transform surgical outcomes…" and "innovative hardware design," including a "wireless automated strut program."

40. As of the date of the filing of this First Amended Complaint, there is a LinkedIn page that purports to be the account of Stinger Orthopedics. The LinkedIn page contains a posting dated approximately April 11, 2025, which describes and depicts the WASP system:



*Fig. 3, Stinger Orthopedic LinkedIn Posting*

41. As of the date of the filing of this Complaint, there is a LinkedIn page that purports to reflect the account of "Nico Riccione" which includes a picture that has been confirmed to be a picture of Nico. https://www.linkedin.com/in/nico-riccione-ba7567141/.

42. Nico's LinkedIn page identifies his occupation as "Clinical Specialist at Stinger Orthopedics, LLC" (the same job title he had at DNE) and includes a post clarifying that the WASP product is designed as an upgrade to manual frame products (i.e., the Products formerly sold by DNE, now Trilliant).

43. In approximately November of 2024, Nico's LinkedIn page contained a posting that said, "Up and coming machine shops, we're looking for you! Contact me today at nico@stingerortho.com. Cannot wait for insane lead times. We don't work slowly and we need shops that can turn around product quickly and efficiently."

44. The aforementioned websites, the recent posts by Nico, and their joint appearance at the ACFAS conference demonstrate that Riccione Sr. and Nico are working together to market products, including the Medusa Products that improperly compete with those sold by Trilliant.

45. By organizing Medusa through his son/employee, Nico, Riccione Sr. plainly sought to hide his involvement in Medusa's marketing of products that are patently competing and nearly identical to the Products sold by Trilliant.

46. Medusa was formed just seven months after he signed the APA and during the term of the Consulting Agreement, demonstrating Riccione Sr.'s clear intention of violating the Covenant Not to Compete and the Consulting Agreement, which Riccione Sr. is now doing.

47. The Medusa Products are essentially identical to the DNE/Trilliant counterparts and are intended for the same medical and surgical applications. As such, the Medusa Products directly compete with the Products sold by DNE.

48. The Medusa Products appear to have minor design and aesthetic modifications. To the extent the Medusa Products reflect Riccione Sr.'s development of patents, copyrights, trademarks, trade secrets or other intellectual property rights during the term and within the scope of the Consulting Agreement, such rights and any proceeds thereof belong to Trilliant.

*Trilliant Has Suffered, and Continues to Suffer, Irreparable Harm*

49. Trilliant has a legitimate and protectible interest in enforcing the Covenant Not to Compete and Consulting Agreement including (i) its interest in preserving the benefit of its bargain to acquire DNE, its intellectual property and goodwill, and the right to exclusively distribute the Products; and (ii) its interest in protecting its trade secrets and other confidential and proprietary information pertaining to the Products, customers, pricing, and manufacturing of the Products.

50. By virtue of Riccione Sr.'s past ownership of DNE, his personal role in developing the Products, and his consulting arrangement with Trilliant, his breaches of the Covenant Not to Compete and Consulting Agreements have caused irreparable harm and continue to pose the risk of further irreparable harm, to Trilliant.

51. Due to the nature of harm, Trilliant's damages cannot be calculated with precision. However: (i) Trilliant would not have purchased DNE for approximately [REDACTED] but for Riccione Sr.'s agreement to abide by the restrictive covenants in the APA, including the Covenant Not to Compete; (ii) if Riccione Sr. and Medusa continue to commercialize the competing and nearly identical Medusa Products, it will cause Trilliant to lose its competitive position and result in a substantial loss of revenue to Trilliant, well in excess of the $75,000 jurisdictional limit.

**CLAIMS FOR RELIEF**

**Count I: Breach of Contract Against Riccione – Covenant Not to Compete**

52. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

53. The APA is a valid and enforceable contract among Trilliant, Riccione Sr., and DNE.

54. Trilliant performed all its obligations and conditions precedent, if any, under the APA.

55. Riccione Sr. is in present, material breach of the APA and, more particularly, the Covenant Not to Compete by developing, promoting, and marketing the Medusa Products, which directly compete with the Products.

56. As a direct, proximate, and foreseeable result of Riccione Sr.'s material breach of the APA, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

57. As Riccione Sr. expressly acknowledged, while Trilliant is entitled to recover its monetary damages, attorneys' fees, costs, and other Losses, money damages are an inadequate remedy for a breach of the Covenant Not to Compete.

58. If not preliminarily and permanently enjoined, Riccione Sr. will continue to violate his obligations to Trilliant and will continue to cause damage to Trilliant's business and goodwill.

### Count II: Breach of Contract Against Riccione Sr. – Consulting Agreement

59. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

60. The Consulting Agreement is a valid and enforceable contract between Trilliant and Riccione Sr.

61. Trilliant performed all of its obligations and conditions precedent, if any, under the Consulting Agreement.

62. Riccione Sr. is in present, material breach of the Consulting Agreement by developing and using intellectual property derived from the Products and within the scope of the Consulting Agreement for his own purposes, to compete with Trilliant, which intellectual property and the proceeds thereof rightly belong to Trilliant.

63. As a direct, proximate, and foreseeable result of Riccione Sr.'s material breach of the Consulting Agreement, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

64. As a consequence of Riccione Sr.'s breach, Trilliant is entitled to recover damages, an order directing Riccione Sr. to hold such intellectual property and the proceeds thereof in constructive trust, and to convey and deliver the same to Trilliant, injunctive relief, and an award of attorneys' fees.

**Count III: Breach of Fiduciary Duty Against Riccione Sr.**

65. Plaintiff repeats and realleges each and every allegation in the numbered paragraphs set forth above.

66. By virtue of his role under the Consulting Agreement, Riccione Sr. had access to and acquired confidential and proprietary knowledge and information regarding Trilliant and the Products and, as such, owes a fiduciary duty to Trilliant not to use such information in competition with Trilliant.

67. Riccione Sr. also owed a duty to use his best efforts in fulfillment of his duties under the Consulting Agreement, and not to use intellectual property derived during the term of the agreement, which properly belonged to Trilliant, for his own purposes or to compete with Trilliant.

68. Riccione Sr. breached these duties by (i) using or attempting to use Trilliant's confidential and proprietary information for his own purposes and to compete with Trilliant; and (ii) by using intellectual property derived during the term of the Consulting Agreement, which properly belonged to Trilliant, for his own purposes or to compete with Trilliant.

69. As a direct, proximate, and foreseeable result of Riccione Sr.'s material breach of his fiduciaries duties to Trilliant, Trilliant has suffered, and will continue to suffer, damages and other irreparable harm.

70. In breaching his fiduciary duties, Riccione Sr. acted willfully, wantonly, intentionally, and with malice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Riccione Sr. as follows:

A. Awarding Plaintiff its monetary damages in an amount to be determined at trial;

B. Awarding Plaintiff pre-judgment and post-judgment interest;

C. Awarding Plaintiff its costs and expenses incurred in this action, including reasonable attorneys' fees;

D. Enjoining Riccione Sr., preliminarily and permanently, from engaging in further breaches of the APA and Consulting Agreement;

E. Ordering Riccione Sr. to hold all intellectual property derived by Riccione Sr. during the term of the Consulting Agreement in constructive trust, and that the same be disgorged to Trilliant, forthwith;

F. Punitive damages; and

G. Granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: April 21, 2025 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | |
| | /s/ John P. DiTomo |
| NIXON PEABODY LLP | John P. DiTomo (#4850) |
| | Sara Carnahan (#7175) |
| Ethan Trull* | Cassandra L. Baddorf (#7365) |
| etrull@nixonpeabody.com | 1201 North Market Street |
| Michael Summerhill* | Wilmington, DE 19801 |
| msummerhill@nixonpeabody.com | (302) 658-9200 |
| Keith Edeus* | jditomo@morrisnichols.com |
| keedeus@nixonpeabody.com | scarnahan@morrisnichols.com |
| Christina E. Kurow* | cbaddorf@morrisnichols.com |
| ckurow@nixonpeabody.com | |
| 70 W. Madison Street, Suite 5200 | *Attorneys for Plaintiff* |
| Chicago, IL 60602-4378 | |
| (312) 977-4400 | |
| *pro hac vice applications forthcoming* | |